Mrs. Norman H. HATTEN

v.

ESTES CADILLAC, INC., et al.

Civ. A. No. 83–3113.

United States District Court,
E.D. Louisiana.

Jan. 13, 1986.

Thos. W. Davenport, Jr., Davenport, Files & Kelly, Monroe, La., Charles C. Garretson, New Orleans, La., for Mrs. Norman H. Hatten.

Deutsch, Kerrigan & Stiles, David L. Campbell, New Orleans, La., for General Motors Corp.

Edwin A. Stoutz, Jr., New Orleans, La., for Estes Cadillac, Inc.

### OPINION

ARCENEAUX, District Judge.

This is a redhibitory action for recission of the sale of a 1982 Cadillac Seville. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

Presently before the Court are numerous motions filed by defendants General Motors Corporation (GMC) and Estes Cadillac, Inc. (Estes). The parties agreed to waive oral argument; the Court ordered supplemental memoranda and took the motions under submission. Having considered the memoranda of counsel, the record and the applicable law, the Court 1) DENIES the joint motion of GMC and Estes to dismiss for lack of jurisdictional amount, 2) DENIES the motion of GMC and Estes to dismiss on the grounds of prescription, 3) GRANTS as to Estes but DENIES as to GMC the motion to dismiss for failure to tender for repair, 4) DENIES the motion of GMC to determine reasonable attorneys' fees, 5) GRANTS the motion of GMC to dismiss claims of plaintiff for the cost of the Mississippi Road and Bridge Privilege Tax 6) DENIES the motion of GMC to determine mileage credit and 7) DENIES the motion of GMC to dismiss claims of plaintiff against GMC for acts or omissions of GMC dealerships. This Court has previously dismissed plaintiff's claim for non-pecuniary damages on defendants' motion for summary judgment.

Plaintiff purchased the Seville on March 5, 1982, from Estes in New Orleans for

$25,404.00. In subsequent months, plaintiff claims the auto revealed many defects ranging from the incessant illumination of the "check engine" light on the dashboard to uncontrollable acceleration. On five occasions in the following twelve months, plaintiff brought the Seville in for service and repair at Estes. The service record reflects minor complaints except for the last two occasions involving the malfunctioning cruise control (February 9, 1983) and intermittently non-operational windshield wipers (March 17, 1983). Eight other malfunctions occurred and were repaired on the road or were repaired by Watkins Oldsmobile-Cadillac (Watkins), a Gulfport, Mississippi, Cadillac dealer unrelated to Estes.

On April 20, 1983, plaintiff abandoned the Seville at Watkins upon learning of new complications which rendered the car immobile. After this suit was filed the Seville was sold at an auction pursuant to an agreement among the parties to the lawsuit. By the terms of the agreement, titled "Agreement to Mitigate Damages," the proceeds are to be credited against any recovery by plaintiff in this action.

At Louisiana law, a seller is bound to two principal obligations: that of delivering and that of warranting the object sold. La.Civ. Code.Ann. art. 2475 (1952). The obligation of warranty has two facets. First, the seller warrants that the buyer will not be deprived of the thing sold by claims of third persons. La.Civ.Code Ann. arts. 2476, 2500 (1952). Second, the seller warrants that the thing sold is free from hidden defects or redhibitory vices. La.Civ. Code Ann. arts. 2476, 2520 (1952).

A buyer has two options upon his discovery of a defect in the thing sold. First, he may bring an action in redhibition for recission of the sale if the defect renders the thing sold "either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." La.Civ.Code Ann. art. 2520 (1952). A seller in good faith, i.e. one who was unaware at the time of sale of the defect in the thing sold, is initially bound only to repair the defect. La.Civ.Code Ann. art. 2531 (1985). If the seller is unable to repair the defect, the seller is bound to restore the price, expenses of sale and expenses of preservation of the object of sale. *Id.* The bad faith seller, one who knew of the defect and neglected to declare it, is liable for damages suffered by the buyer as a result of the defect in addition to liability for the price and expenses. La. Civ.Code Ann. art. 2545 (1952).

The second option available to the buyer is the action for reduction of the price or action in *quanti minoris.* La.Civ.Code Ann. art. 2541 (1952). This action permits the buyer to retain the defective thing sold and obtain a refund of part of the purchase price in proportion to the reduction in value caused by the defect.

Although an action in redhibition is essentially contractual, Louisiana law requires no privity of contract for a buyer to recover from the manufacturer of a defective product.[1] *Rey v. Cuccia,* 298 So.2d

---

[1] The requirement of privity in redhibitory actions was abolished by the Louisiana Supreme Court in *Media Production Consultants, Inc., v. Mercedes Benz of North America, Inc.,* 262 La. 80, 262 So.2d 377 (1972), thus providing Louisiana consumers with a direct right of action against the manufacturer. The *Media* case has been critized as unjustifiable under the Code since it relies on common law jurisprudence in obviating privity. *Note,* 47 Tul.L.Rev. 473 (1973). Another commentator has asserted that the legislature did not intend *Media* to survive the 1974 amendment to Civil Code art. 2531 which requires tender to the good faith seller for repair of the defective product before initiation of an action in redhibition. *Note,* 49 Tul.

L.Rev. 484, 488 (1975). The obvious purpose of the amendment was to avoid lawsuits over easily remedied defects. This purpose is undermined if not entirely frustrated by judicial legislation of a direct right of action against the manufacturer since the manufacturer, presumed a bad faith seller, is afforded no right of repair. Were this Court writing on a clean slate, plaintiff's claims against GMC would be dismissed for lack of privity. The Court, however, is Erie-bound to follow state supreme court decisions to the contrary. *See, e.g., Rey v. Cuccia,* 298 So.2d 840 (La.1974). The Court is also circuit-bound to hold that privity is not required. *See Austin v. North American Forest,* 656 F.2d 1076 (5th Cir.1981).

840 (La.1974). Because the manufacturer is presumed to be a bad faith seller, the manufacturer is subject to the provisions of article 2545 in a suit in redhibition. *Id.* at 845.

## PLAINTIFF'S CLAIM SATISFIES THE REQUISITE JURISDICTIONAL AMOUNT

■ In a joint motion to dismiss, GMC and Estes contend that plaintiff's claim fell below the minimum jurisdictional amount after this Court's denial of non-pecuniary damages and after the parties' sale of the Seville at the auction. As a result, movers argue, this Court no longer has jurisdiction.

The amount in controversy is determined at the time suit is filed in federal court. Subsequent events, "whether beyond plaintiff's control or the result of his own volition," cannot destroy the Court's jurisdiction once it has been acquired. C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure: Jurisdiction § 3702 (1976).

That plaintiff purchased the Seville for over $25,000.00 is undisputed. Clearly, plaintiff's claim for recission of the sale was also in excess of $25,000.00 at the time suit was filed. The subsequent sale of the Seville and court order denying non-pecuniary damages, even if they caused the claim to fall below $10,000.00, do not affect this Court's jurisdiction. *See Commercial Credit Corp. v. Lane,* 466 F.Supp. 1326 (M.D.Fla.1979) (Creditor's recovery of $7,000 by repossession and sale of mobile homes did not destroy federal jurisdiction in the diversity action, even though the amount in controversy fell below $10,-000.00) Thus, the motion to dismiss for lack of jurisdictional amount is DENIED.

## PRESCRIPTION DOES NOT BAR PLAINTIFF'S ACTION

■ Movers argue that prescription bars plaintiff's suit because it was filed more than one year after the date of sale. Under La.Civ.Code art. 2534, a redhibitory claim prescribes one year after the date of sale. The article does not, however, apply to sellers with knowledge of the defect. In the case of such sellers, La.Civ.Code art. 2546 provides that prescription runs from the time the buyer discovers the defect. Because the manufacturer is presumed to be a seller with knowledge of the defect, redhibitory prescription runs from the time the buyer discovers the defect. *Rey v. Cuccia,* 298 So.2d 840, 845 (La.1974); *Blalock v. American Employers Insurance Co.,* 345 So.2d 166, 167 (La.App. 2nd Cir. 1977), *writ denied,* 396 So.2d 221 (La.1978). In the instant case, most of the defects complained of were discovered within a year of the initiation of plaintiff's action. Thus, for the purposes of this motion, plaintiff's claim against GMC has not prescribed.

■ Furthermore, plaintiff's claim against Estes has not prescribed. Where a seller attempts to remedy a defect in the thing sold, the one year prescriptive period begins to run when the seller abandons his attempt to repair the defect. *De la Houssaye v. Star Chrysler, Inc.,* 284 So.2d 63 (La.App. 4th Cir.), *writ denied,* 286 So.2d 662 (La.1973); *Domingue v. Whirlpool Corp.,* 303 So.2d 813, 815 (La.App. 3rd Cir. 1974). "[O]nce the prescriptive period has commenced to run, any repair attempts made by the seller interrupt prescription, and the purchaser has one year from the last attempted repair to bring suit." *Domingue,* 303 So.2d at 815. Estes concedes that plaintiff's car was brought in for repair on several occasions but questions whether the defects repaired were of a redhibitory nature.

The question of the existence of a redhibitory defect is a question of fact to be decided by the trier of fact. *Newman v. Dixie Sales & Service,* 387 So.2d 1333, 1339 (La.App. 1st Cir.1980). Caselaw indicates that even where defects considered in isolation are not redhibitory, the defects may be redhibitory when considered *in toto. Chalmers v. Stephens Chevrolet, Inc.,* 461 So.2d 395 (La.App. 4th Cir.1984); Redman, *Redhibition in Louisiana; Uses and Its Problems Today,* 50 Tul.L.Rev. 530, 536 (1976). In cases such as this one where many of the defects claimed do not rise to

redhibitory vices, the factual issue is whether the defects, considered *in toto,* would render use of the car "so inconvenient that it must be supposed plaintiffs would not have paid almost [$28,000] had they known of the defects." *Chalmers,* 461 So.2d at 399. Such a determination should be made at trial. The motion of GMC and Estes for summary judgment on the grounds of prescription are DENIED.

## PLAINTIFF FAILED TO TENDER THE AUTOMOBILE FOR REPAIR

■ Defendants further argue that plaintiff's claim must fail because of plaintiff's failure to tender her car for repair before the filing of this action. Tender to the seller for repair is a prerequisite to recovery from the good faith seller in redhibition. La.Civ.Code Ann. art. 2531 (1985), *Dickerson v. Begnaud Motors, Inc.,* 446 So.2d 536 (La.App. 3rd Cir.), *writ denied,* 449 So.2d 1349 (La.1984).

Plaintiff failed to tender the Seville to the seller Estes when she abandoned the car in Mississippi. Plaintiff, without citing authority, argues that abandoning the car at a GMC dealer in Mississippi constituted the requisite tender to Estes because GMC dealers are agents of GMC. Both the law and Estes' dealership agreement belie plaintiff's contention.

The Court in *Arnson v. General Motors Corporation,* 377 F.Supp. 209 (N.D.Ohio 1974) considered the relationship of GMC and one of its dealers. The Court held, as a matter of law, that no agency relationship was established by the dealership contract where there was no evidence indicating any control by GMC over dealership operations. In the instant case, plaintiff has not pointed to any such control. Furthermore, plaintiff's assertion that the dealers are GMC's agents is contrary to the express provision of the dealership contract.

Plaintiff further argues that tender for repair was excused because the car was brought in for repair several times before its abandonment in Mississippi. This is not a case, however, such as either *Wiltz v.* *Dixie Auto Sales, Inc.,* 315 So.2d 811 (La. App. 3rd Cir.1975) or *Evangeline Medical & X-Ray Distributors Corp. v. Coleman Oldsmobile, Inc.,* 402 So.2d 208 (La.App. 1st Cir.1981), where the seller tried and failed several times to repair a recurring defect. In such cases, further attempts to repair would be fruitless and therefore tender for repair is obviated. *Breaux v. Winnebago Industries, Inc.,* 282 So.2d 763 (La.App. 1st Cir.1973), is also distinguishable. That case was decided before the 1974 amendment to La.Civ.Code art. 2531 requiring tender for repair as a prerequisite to a suit in redhibition.

Even if plaintiff satisfied her obligation to tender the auto for repair, she failed to tender the Seville to the *seller* for recission of the sale. Rather, plaintiff filed suit before Estes was even aware that plaintiff wanted recission of the sale. Thus, plaintiff failed to satisfy this essential prerequisite, distinct from the tender for repair requirement, for recission of the sale in redhibition. *See Ford v. Dixie Buick, Inc.,* 400 So.2d 228 (La.App. 4th Cir.1981).

Plaintiff attempts to excuse her failure to tender the object of sale in light of the car's immobility at the time of its abandonment. Although the car was inoperable at the time it was abandoned in Mississippi, plaintiff does not claim that the car could not have been repaired and driven to New Orleans for proper tender. In any event, plaintiff cannot provide any excuse for her failure to at least notify Estes of the whereabouts of the car and her intention to rescind the sale. The policy of avoidance of litigation reflected by the tender for repair requirement of La.Civ.Code art. 2531 would hardly be served without the imposition of at least this minimal obligation on the buyer.

■ On the other hand, plaintiff was not required to tender her car to GMC for repair. By the terms of La.Civ.Code art. 2531, the buyer's obligation to tender only extends to the "seller who knew not the vices of the thing." The manufacturer of the allegedly defective product is conclu-

sively presumed to know the vices of the things he makes. *Weber v. Fidelity & Casualty Insurance Co.*, 259 La. 599, 250 So.2d 754 (1971); *Anselmo v. Chrysler Corp.*, 414 So.2d 872 (La.App. 4th Cir.1982). Thus, the buyer is not required to tender the defective product to the manufacturer for repair before instituting a suit in redhibition against the manufacturer. *Dickerson v. Begnaud Motors, Inc.*, 446 So.2d 536 (La.App. 3rd Cir.), *writ denied*, 449 So.2d 1349 (La.1984); *Associates Financial Services v. Ryan*, 382 So.2d 215 (La.App. 1st Cir.1980).

The cases cited by GMC in support of its assertion that plaintiff must afford it an opportunity to repair the defect before instituting an action in redhibition are inapt. Both *Vance v. Emerson*, 420 So.2d 1032 (La.App. 5th Cir.1982) and *Starwood v. Taylor*, 434 So.2d 1236 (La.App. 1st Cir. 1983) address the buyer's obligation to tender the thing sold. As noted above this obligation is distinct from the obligation to afford the good faith seller the opportunity to repair. *See* Robertson, *Manufacturer's Liability for Defective Products in Louisiana Law*, 50 Tul.L.Rev. 50, 96–98 (1975).

### PLAINTIFF HAS SATISFIED HER OBLIGATION TO TENDER THE OBJECT OF SALE FOR RECISSION WITH RESPECT TO GMC

■ The obligation to tender the object of sale for recission was satisfied here with respect to GMC. In *Ticheli v. Silmon*, 304 So.2d 792 (La.App. 2nd Cir.1974), the required tender was satisfied when "plaintiff's attorney made written demand upon the manufacturer to immediately contact his office to make arrangements for an exchange or cancellation of the entire transaction." *Ticheli*, 304 So.2d at 798. Likewise, in *Greenburg v. Fourroux*, 300 So.2d 641 (La.App. 3rd Cir.), *writ denied*, 303 So.2d 181 (La.1974), plaintiff's letter to defendant, in which plaintiff stated, "[e]ither take the puppy back and return my $200 purchase price ... or I will file a redhibitory action against you," was held to constitute the required tender. *Greenburg*,

304 So.2d at 644. Against this backdrop of Louisiana jurisprudence, plaintiff's letter to GMC demanding recission of the sale satisfies the buyer's obligation to tender the object of sale.

■ GMC further argues that plaintiff cannot return the object of sale because the car was sold at auction. Therefore, according to GMC, there can be no recission. This argument is disingenuous since plaintiff and defendants entered an "Agreement to Mitigate Damages" in which the parties agreed that the car should be sold at auction without affecting the rights of the parties to the contract. This case should be no different from a case in which the buyer returned the product to the manufacturer who subsequently resold the product. That contractual obligations may alter the provisions of the Civil Code was made clear in *Primeaux v. Bennet Homes, Inc.*, 339 So.2d 1251, 1254 (La.App. 1st Cir.1976) where the Court stated that "codal articles on redhibition ... do not proscribe agreements modifying their provisions, they merely regulate the rights of purchaser and vendor in the absence of agreement contrary to their terms."

■ Whether or not the requirements of tender for repair and tender for return were met by plaintiff, she has a cause of action for reduction of price pursuant to La.Civ.Code art. 2544. Tender for repair is not a prerequisite for an action under La. Civ.Code art. 2544. *Boeneke v. W.D. Trotter*, 426 So.2d 230 (La.App. 1st Cir.1983); *Dunn v. Pauratore* 387 So.2d 1227 (La. App. 1st Cir.1980). Nor does the buyer's obligation to tender the return of the object of sale apply to actions for reduction of price. *Morris N. Palmer Co. v. Campesi*, 647 F.2d 608 (5th Cir.1981); *Stratton-Baldwin Co. v. Brown*, 343 So.2d 292 (La.App. 1st Cir.1977). Otherwise, an action for reduction of the purchase price is governed by the same rules that govern redhibition. *See Gonzales v. Schultis*, 427 So.2d 669 (La.App. 4th Cir.1983); *Bendana v. Mossy Motors, Inc.*, 347 So.2d 946 (La.App. 4th Cir.1977). The trial court has the discre-

tion to determine whether an action should be for recission or reduction of price. La. Civ.Code Ann. art. 2543 (1952). Thus, in the instant case plaintiff has at least stated a claim against both the manufacturer and the dealer for reduction of the purchase price. In light of the foregoing, defendants' motion for summary judgment on grounds of prematurity is GRANTED with respect to plaintiff's redhibitory claim against Estes and DENIED with respect to plaintiff's claim against GMC.

## PLAINTIFF MAY NOT RECOVER THE MISSISSIPPI ROAD AND BRIDGE PRIVILEGE TAX

GMC contends that the recovery provided for in La.Civ.Code art. 2545 does not include the cost of the Mississippi Road and Bridge Privilege Tax. La.Civ.Code art. 2545 provides that a bad faith seller must, among other things, reimburse the expenses occasioned by the sale. The category of expenses of sale has been held to include such matters as sales tax, license tax, license and title transfer fees and finance charges. *See Smith v. Max Thieme Chevrolet Co.,* 315 So.2d 82 (La.App. 2nd Cir.1975); *Lee v. Blanchard,* 264 So.2d 364 (La.App. 1st Cir.1972). However, collision insurance is not an "expense of sale" if it is not required by the seller. *Cain v. Rapides Dodge, Inc.,* 207 So.2d 918, 921 (La. App. 3rd Cir.), *writ denied,* 252 La. 163, 210 So.2d 51 (1968).

While it is certainly true that the Privilege tax expense would not have been incurred "but for" the sale of the car, it is clear that such a *sine qua non* test cannot be conclusive. The payment of the Mississippi tax is relatively remote from the sale of the car. Like collision insurance, which is not recoverable in redhibition, the Mississippi tax may be characterized as stemming from plaintiff's use of the car rather than its sale. Furthermore, the payment of the costly Mississippi tax is more an expense of plaintiff's residence in Mississippi than an expense of the sale of the car in Louisiana. Finally, plaintiff has cited no authority whatsoever indicating that taxes imposed

by a foreign state may be recovered as an expense of sale. Contrary to plaintiff's contention, this Court has never analogized Louisiana's license fees to the Mississippi Road and Bridge Privilege Tax. Therefore, GMC's motion to dismiss is GRANTED with respect to plaintiff's recovery of the Mississippi Road and Bridge Privilege Tax.

## MILEAGE CREDIT AND ATTORNEYS' FEES MAY NOT BE SET AT THIS EARLY STAGE

GMC has submitted a motion to set mileage credit and attorneys' fees. In support of its motion, GMC cites caselaw which shows a wide range of attorneys' fees awards, often including the cost of appeal. Obviously these fees cannot be determined at this stage.

Plaintiff has submitted no opposition to defendants' motion for credit for mileage. However, the "use value" of the car should be determined in light of the inconvenience caused by the defects. *See Capitol City Leasing Corp. v. Hill,* 404 So.2d 935 (La. 1981) (manufacturer received no credit for buyer's use of machines where use was interrupted frequently). Therefore, GMC's motion to assess attorneys' fees and mileage credit is DENIED at this time.

## PLAINTIFF'S CLAIM IS NOT BASED ON ACTS OR OMISSIONS OF GMC DEALERS

GMC has moved to dismiss plaintiff's claims based on acts or omissions of Watkins and Estes. No such claims exist in this case. Plaintiff's claim in redhibition is based on alleged defects existing at the time of sale, not on any acts or omissions of GMC dealerships. Thus, GMC's motion to dismiss these claims is without merit. It would be an act of ultimate futility for the Court to "dismiss" claims which have not been exerted. GMC's motion is therefore DENIED.