302 So.2d 327 (1974)
William G. TAYLOR
v.
Curry R. ROACH.
No. 9941.
Court of Appeal of Louisiana, First Circuit.
October 14, 1974.
*329 G. Allen Walsh, Baton Rouge, for appellant.
Michael J. Uter, Baton Rouge, for appellee.
Before LANDRY, BLANCHE and NEHRBASS, JJ.
NEHRBASS, Judge.
This is a suit seeking damages for personal injuries sustained by plaintiff as a result of a gun shot wound. Suit was brought for $22,055.00 damages, alleging that defendant intentionally shot plaintiff and in the alternative that the shooting and resulting injuries suffered by plaintiff were due to the negligence of the defendant. The defendant answered denying liability and alternatively pleading affirmative defenses of contributory negligence and assumption of risk.
The trial court dismissed plaintiff's suit. Plaintiff has appealed stating that the trial court erred in failing to find that the shooting was intentional and in holding that plaintiff had assumed the risk of his injury. Defendant has not answered the appeal but has submitted a brief.
This Court finds that on or about July 16, 1972, plaintiff and defendant were involved in a near automobile collision on Airline Highway in Baton Rouge, Louisiana. Plaintiff and defendant pulled their vehicles onto the side of the highway and had a brief but heated and vulgar conversation during which defendant pointed a pistol at the plaintiff.
The plaintiff, who is six feet three inches tall and weighs 225 pounds, is a much larger man than the defendant, who is five feet eleven inches tall and weighs 160 pounds. The defendant testified that plaintiff was the aggressor during this first encounter and that he made threats of physical harm and used vulgar and abusive language and made obscene gestures and remarks directed toward the defendant and his minor daughter. Plaintiff denies this. The defendant, allegedly in fear for his safety and that of his daughter, held a pistol on the plaintiff and told him to forget about this matter.
Defendant, who had his minor daughter with him, withdrew from this encounter and proceeded down the Airline Highway, presumably on his way home, when he began to suspect that he was being followed by the plaintiff. During the next thirty minutes plaintiff did follow the defendant over various city streets, for a distance exceeding ten miles. During this time plaintiff and defendant had two more heated conversations which ended in plaintiff being shot. Plaintiff states that his purpose in following defendant was to learn his identity so he could report him to the proper authorities. Defendant wished to avoid being followed home for he feared harassment and was concerned for the present and future safety of his daughter who lived with him alone.
In an effort to determine if he was being followed and later in an effort to discourage or lose the plaintiff, the defendant deviated from his route home, and away from plaintiff's route home, by turning left on Evangeline Street and was followed by plaintiff. In his efforts to lose plaintiff defendant circled back by turning onto Plank Road, back to and across Airline Highway and past Monarch Street on which plaintiff lived. Defendant proceeded further and turned right onto Hooper Road away from his home and proceeded six miles down Hooper Road, sometimes at a high rate of speed, in his effort to lose the plaintiff.
*330 When defendant reached the Zoar Baptist Church on Hooper Road he pulled into one of two driveways and plaintiff followed and parked his truck behind that of defendant's. Defendant left his vehicle and approached plaintiff's vehicle and they had conversation a second time. Plaintiff states he attempted to learn defendant's identity. Defendant learned plaintiff's identity and recorded his license number and told plaintiff to stop following him and not to follow him home. Defendant testifies that plaintiff said he would follow him home and would get a gun and would come back and kill the defendant. Plaintiff testifies the defendant had a pistol in his possession during this encounter.
Defendant again withdrew and circled around and left the Zoar Baptist Church parking lot and turned right on Hooper Road and traveled approximately one city block to Joor Road where he turned right, again away from his home, and plaintiff followed. Defendant then turned into a service station lot, around the service station and into another driveway leading to the Zoar Baptist Church and stopped his vehicle in the parking lot. Plaintiff followed and parked his vehicle directly behind defendant's vehicle.
Defendant again got out of his vehicle and approached plaintiff's vehicle, this time carrying the pistol in his hand, and the parties had conversation a third time. During this final encounter defendant was struck in the face by plaintiff and plaintiff was shot.
The trial court found that the shooting was not intentional but was accidental and that plaintiff had not carried his burden of proof. We cannot disturb this finding unless it is manifestly erroneous. Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964).
Evidence as to how the shooting occurred is conflicting. We have as evidence the testimony of the parties, the testimony of a ballistics expert, the testimony of a witness, and defendant's plea of guilty to a criminal charge of aggravated assault. Plaintiff testified that defendant approached his vehicle and pointed the pistol at his face and that defendant announced his intention to kill the plaintiff. Plaintiff, who was seated on the driver's side of his vehicle testified that in an effort to escape he struck the defendant in the face with his right hand, that defendant fell slightly back and down and that he then rose and fired the pistol.
Defendant testifies that he approached plaintiff's vehicle with the pistol carried in his right hand and at his side and that he did not point the pistol at plaintiff. Defendant testified that it was never his intention to shoot the plaintiff, that his purpose was to discourage plaintiff from following him and that he carried the pistol to prevent an attack by plaintiff. Defendant said that when the third conversation commenced plaintiff struck him in the face with his left hand and that he raised his right arm to ward off the blow and that the pistol discharged accidently.
The bullet struck the plaintiff in the left arm pit, entering his body at this point, and made its exit on the right side of plaintiff's neck, striking his right arm and the windshield of his truck. Mr. Ronald C. Jewell, a ballistics expert, testified after examining plaintiff's truck and after observing both, plaintiff and defendant, in the positions in which each claimed to be. Mr. Jewell testified that both, plaintiff's and defendant's, versions of the shooting were possible and reasonable in view of the trajectory of the bullet.
Mr. Glen Daryl Dedon, a witness, was driving through the parking lot of the Zoar Baptist Church and observed both, plaintiff and defendant, at the time of their third encounter. At the time of the shooting, Mr. Dedon was parked in the driveway of the Zoar Baptist Church in preparation to driving onto Hooper Road *331 and he observed what transpired through the rear view mirror of his vehicle. Mr. Dedon observed the defendant as he approached plaintiff's vehicle and observed that he was carrying a pistol. By his own testimony, Mr. Dedon looked away momentarily and did not see the blow struck by plaintiff but claims that he did observe the discharge of the weapon.
Under the circumstances, we believe that the trial court properly refused to allow Mr. Dedon to characterize defendant's actions as intentional, as this calls for a conclusion on the part of the witness. Opinion testimony of lay witnesses is generally excluded. We do not feel that this case falls within one of the exceptions to this rule as plaintiff would have us believe. The case of Bell v. Acadia Mutual Life Insurance Company, 204 La. 1005, 16 So.2d 821 (1944), cited by plaintiff, is inapposite and distinguishable on its facts. Assuming for the sake of argument that Mr. Dedon's opinion was admissible, we do not believe that he was armed with sufficient facts to properly draw a conclusion as to defendant's intention, especially in view of the fact that he did not witness all that transpired immediately prior to the shooting.
The fact that defendant, Curry Roach, pled guilty to a criminal charge of aggravated assault is not conclusive, but is mere evidence that the shooting was intentional. Davis v. Bankston, 192 So.2d 614 (La.App.3rd Cir.1966).
We cannot say that the trial court's finding the shooting to be accidental rather than intentional is manifestly erroneous. It has been said that where irreconcilable facts are presented, an Appellate Court will not reverse the judgment of the trial court, if the evidence of the successful party, when considered by itself, is sufficient to sustain the judgment. Rhodes v. Sinclair Refining Company, 195 La. 842, 197 So. 575 (1940). Accordingly, we sustain the trial court's conclusion that the shooting was accidental.
We come now to the question of whether the trial court erred in holding that plaintiff had assumed the risk of his injury. Assumption of the risk is a rather narrow defense which is restricted by the requirements that plaintiff know and understand the particular risk he is incurring, and that his choice in assuming said risk is entirely free and voluntary. Phister v. Phoenix of Hartford Ins. Co., 290 So.2d 362 (La.App.4th Cir. 1974); Little v. Mississippi Chemical Express, Inc., 285 So.2d 267 (La.App.3rd Cir.1973). The basis of the defense is the express or implied consent of the injured party to relieve the negligent party of his obligation of reasonable care towards him, and all of the facts and circumstances surrounding the implied consent must be considered in determining the applicability of the defense. Mitchell v. Hepinstall Steel Co., 264 So.2d 325 (La.App.4th Cir. 1972).
We believe that plaintiff did assume the risk of being injured by a gun shot. The plaintiff knew that the defendant had a gun and it is clear that plaintiff saw defendant with the gun in his possession during the first two encounters. Plaintiff was told by defendant in no uncertain terms to quit following him and not to follow him home. Plaintiff must have known that defendant was angry enough or frightened enough or concerned enough to use the pistol if he continued to push the defendant by following him. Plaintiff was fully aware of and fully appreciated the risk of being shot, either accidentally or purposely. From the record, we fully believe that plaintiff had an opportunity to withdraw, even from the third encounter, before the shooting occurred, but he chose instead to strike out at the defendant. Under the circumstances where plaintiff had knowledge of and fully appreciated the risk, and without any special exigency compelling him, exposed himself to such *332 risk, his acts may be deemed to have been voluntary and to constitute an assumption of the risk.
All costs of this appeal are to be borne by appellant.
Affirmed.